Good morning. May it please the court. My name is Tara Fumerton and I represent the petitioner Henry Jose Garcia-Gomez. If possible, I would like to reserve three minutes of my time for rebuttal. Mr. Garcia-Gomez has been ordered removed from the United States, his home for the past 25 years, to Nicaragua, where when he was just 13 years old he raised his hands in political opposition to the Sandinistas and as a result was brutally beaten and left unconscious in the street. I would like to highlight for you three reasons why that order was made in error. First, as a matter of law, the record evidence does not support a conclusion under the modified categorical approach that Garcia-Gomez's California conviction for possession for sale of a controlled substance constitutes an aggravated felony, precluding Garcia-Gomez from consideration of asylum and voluntary departure. Counsel, isn't your real issue here the, if you will, the apparent conflict between Snellenberger and Vidal? Well, I would submit, Your Honor, that there isn't a conflict. There is or is not? There is not a conflict. Okay. But in Snellenberger, the Court was trying to decide the issue of whether a minute Snellenberger that was not considered one of the narrow-set specified documents that could be considered under the modified categorical approach. I would note that in Snellenberger, Vidal is not mentioned once. And I do not believe that the issue of whether or not he languished in the minute order was sufficient. Well, if Snellenberger controls, and in this particular case the complaint specifically refers to the fact that Jose Garcia, who did unlawfully possess for the purpose of sale of a controlled substance to wit, methamphetamine. Methamphetamine is clearly a controlled substance for Federal laws, is it not? Yes. So what's the problem? Well, the problem is that the conviction documents. And here we have an abstract of judgment, a minute order, and the docket report. And then we have the felony complaint that Your Honor was just referencing. But he put. But he put. See, the difficulty I have is that, you go back to some of these other cases, here he put guilty to the exact crime charged in the information. And that exact crime meets the generic definition. I don't know how much clearer you can get to fall four square in the documents, the plea, the crime, the generic definition. What case would take you out of that? Well, I would submit that Bedal would take us out of there, because there the Court required the language as charged in to be able to reference the information. That's back to the point I asked you in the first place. You're saying that Bedal really does create a problem, because this additional language that Bedal seemed to require and which has been repeated in at least three of our nonpublished cases is not present. So how do we resolve the conflict between Snellenberger and Bedal? I think the resolution is that in Snellenberger, the Court held that you can consider a minute order. So I'm not disputing whether or not the minute order can be referred to. But I think you read the cases in tandem and say that, okay, we can look to the minute order, but the minute order has to contain the language as charged in the complaint. But the difficulty there is Bedal did not plead – he pled guilty to a crime other than the one for which he was charged. So it was a very different circumstance. I don't see how Bedal helps you or hurts you. It's just a different circumstance. Well, I would like to point to language in Bedal that the Court stated, which said that in establishing this principle that you need to have this as charged in language, that it is possible that the prosecution need not have formally amended the two counts for Bedal to have pled guilty to conduct other than that alleged in the complaint. And so I would argue that if – well, it is true that the minute order refers to the same statutory charge as – or the same statutory code as the complaint charged, that hopefully our defense lawyers are taking into consideration possible immigration consequences down the line and looking at the possible language that they – or the possible conduct they could have pled to, that it's possible that there was another drug that they ended up agreeing to plead to. The difference is the language. You quote the full language out of Bedal, says the plea did not – he pled to a crime that was different than the one charged, and therefore, the Bedal court goes on to say, plea did not therefore establish that Bedal admitted to all or any of the factual allegations in the complaint. There you have this discrepancy, this disjunction between the documents and the plea, and you don't have that here. You have a one-to-one correspondence with a generic crime. And so I'm still having some trouble understanding why some broad principle would change the actual facts here. I mean, is there any doubt what he pled to? Well, I would submit that there is, that the record is inconclusive, and so then there is doubt. How many charges were there, one? Well, we know that there is a complaint in the record for which there were two charges. So clearly, he did not plead guilty to exactly what was in the complaint. Next, we don't have the plea agreement here. And that is something that could definitively answer this question. Wait a minute. Normally, we have. Wait a minute. I thought that count one of the complaints was the one that I read earlier that referred to the fact that he had pled guilty to the sale of a controlled substance to wit methamphetamine. That's correct, isn't it? That is correct. Okay. And then you also have an electronic docket report. You've got an abstract of judgment. You've got a minute order, all of which confirm pleading guilty to count one, which is the one we just talked about. Doesn't that fully satisfy Snellenberger? Again, I don't think that Snellenberger addressed the specific issue that was raised in the bail, because I seem to think that it would be difficult to say that someone Does it have to? I think it does, because I don't think that Snellenberger What about the distinction that Judge McEwen just made in terms of the nature of what happened at Bidall? Isn't that quite different than Snellenberger? I don't know that I necessarily would agree that's quite different. And because here the issue is the modified categorical approach undisputably applies. Why does it apply? It applies because you could plead guilty to conduct other than that which fits, fits the generic crime. Therefore, when you look at the minute order, which, again, is not something that in Sheppard was something that we originally could look to. The Court has taken the orders or the direction in Sheppard and started to expand the number of documents that it can look to and is slowly eating away against the principles there, which is that we need to determine that the conviction necessarily contains all of the elements of the generic crime. Well, maybe ask it a different way, a simpler way. Where is the ambiguity? Where is the ambiguity? I apologize. I think the ambiguity is that the minute order does not specify the substance. And do you need the minute order if everything else is in compliance? I mean, isn't that just one more document? But the minute order is the only document here that shows what the conviction was, besides the abstract of judgment, which also has vaccine information. So for purposes of this argument, I think it's somewhat indistinguishable  But you have to look at the minute order. But in this case, counsel, you've got so many documents, it almost gets to the superfluity does not vitiate category. There are just all kinds of documents that seem to confirm that Mr. Garcia-Gomez pled guilty to selling methamphetamine. You've got the abstract of judgment, the complaint, the minute order. You don't even need all of those to confirm this under modified categorical analysis, do you? Oh, absolutely you would. Because under the modified categorical approach, if you just had the minute order or the abstract of judgment alone, the specific substance is not mentioned. All right. But he pled the abstract of judgment says count one has a code, has a section number, possession of controlled substance for sale. You go to count one. And then as Judge Smith noted, that's methamphetamine, correct? Well, it's correct that the complaint states methamphetamine. And so you need at least two of those documents. Okay. So now we have A and B. And I'm contending you don't have the link between the two, which is what Fidel required. And if you look at some of the more recent cases that have been unpublished What does count one refer to? I don't know. The one could have been what the Court needs. I mean, every criminal case is charged by an information indictment. So is it count one of the information, count one of the indictment? There's no ambiguity here, is there? Well, again, I think that the ambiguity is that it's possible that there was an additional substance that was at issue there. It sounds like you're arguing the categorical analysis, which we agree it doesn't make it here because there are substances included in that code section that are not under the Federal Controlled Substance Act. But that's not true in the modified categorical analysis. Because here, as we've both been talking about, you've got the complaints, you've got the abstract of judgments, you've got the minute order, all of which refer to this count one, which specifically mentions methamphetamine, which is specifically mentioned I forget what schedule it is, but in the Controlled Substance Act. There's no ambiguity, is there? Again, I would submit that the ambiguity is because there is no language in the conviction documents that states that the conviction was for the substance as charged in the complaint. That's what Vidal says. That's what this Court said in Beltran, decided less than two months ago, where the Court stated that because the judgment of conviction did not indicate that Beltran pleaded guilty as charged in the information, the Court could not consider the information. But Vidal was based upon People v. West, a California case. But that case has been characterized as a plea of no law contendery that doesn't establish factual guilt, which kind of gets back to the point that Judge McKeown made before. Doesn't that distinguish it from Snellenberger? Again, I would submit that the record is inconclusive as to whether or not the conviction was for a no contest. The conviction was a result of a no contest plea or not. It does say in the minute order and in the abstract of judgment, it says guilty. But if you look, there doesn't seem to be a place for them to check a box to say no contest on these particular forms. Again, the plea agreement would answer this question. Or the transcript of the plea would answer this question. The government did not submit those. We do not have those. So now we're left in a world where we need to look at other documents to conclude whether it necessarily contains the elements of the generic crime. I'd like to ask you a different line of questions. My colleagues are focused on whether you even get the possibility. But supposing he did go back, what is the likelihood that he wouldn't be persecuted? The country is different, is it not? Well, the country has, you know, it's been a significant amount of time, although I will. What? It has been a significant amount of time, although Daniel Ortega and the Sandinistas are back in power. And they are different. They have a different tone, don't they? Well, I think that the. What evidence is that they're persecuting anybody? Well, the evidence is this past persecution. What? Past persecution. And under the law, if you accept from past persecution. Well, let's be realistic. You know, if the country has changed pretty completely, what's the. What possibility is that he could show that that. I mean, we could remand and go through a whole rigmarole, but what would achieve the country has changed. You can't show anything different. Can you? Well, Your Honor, he was 13 years old. It doesn't have anything to do with the current country's conditions. Where are the 17 Sandinistas persecuting anybody? Well, the state report said that the Sandinistas and the government of Daniel Ortega are engaging in significant. They do what? Daniel Ortega and the Sandinistas are engaging in significant human rights abuses. But I would also submit that it's the government's burden because we have established or Garcia Gomez established past persecution. And if you establish past persecution, you have a presumption of future persecution with the government. Well, then we have to do that mechanically if the country's conditions have definitely changed. That would be the government's burden. If you establish past persecution and he's, if he were eligible not only for what, withholding of removal and CAT. Correct. If you uphold the determination that there was an aggravated felony, which I submit that there, you should not, then he would be still eligible for withholding of removal or withholding under CAT. And our brief leaves us out in length. But we, or I would submit that he has established past persecution and therefore was entitled to this rebuttable presumption. Where has he established past persecution? The Supreme Court in Elias Zacharias indicated that refusal to fight in the context of forced recruitment is not persecution on account of a person's political views. How in does he establish past persecution here? Well, just to be precise, in Elias Zacharias, the Court said it does not necessarily mean that there was persecution on behalf of a political opinion. It did not foreclose the possibility that someone could be resisting. That's how you read that. I'm sorry? That's how you read it, right? That's absolutely how I read it. If you want to save your remaining time, you're down to 18 seconds. But I will give you some rebuttal time. Yes. Yes, Your Honor. Thank you. Good morning, Your Honors. And may it please the Court. Michael Heiss on behalf of the Respondent, the Attorney General of the United States. The question in this case is reliability with regards to the aggravated felony conviction. The documents we have, are they reliable? Could the immigration judge and then the board look to these documents and be convinced that the alien was convicted of an aggravated felony? And it is clear that he was. We have the abstract of judgment that says he was convicted under California Health and Safety Code 11-378. We have a complaint that says count one is possession with intent to sell methamphetamine. We have a minute order that says the alien pleads guilty to count one. There is no doubt here. The concern in Vidal was that there was ambiguity, that it was unclear what happened. We had a West plea. We just, the Court couldn't tell. And so it was critical to be clear as to whether or not he was convicted as charged in the complaint. So that made sense in that instance. Now this Court in two subsequent published cases, I know Your Honor Judge Smith mentioned three unpublished immigration cases that have cited this concern. There were two published immigration cases, Fregoso and Panuliar. But again, Fregoso, like Vidal, involved a West plea. And Panuliar, there was a complaint that was charged in the conjunctive. It's the typical reading. It's basically the plain language of the statute that reads through everything, so it's unclear whether it was. Doesn't it appear that our Court has kind of gone off on a dual track here and neither of the twain shall meet? One's the Snellenberger track and the other's the Vidal track and nobody's paying attention to the other one? Well, that might be resolved soon. There's a case that's pending en banc right now, Young, that actually gets to this point. So the Court might want to consider waiting for Young to address that if it gets to that point. Do we have to wait for the en banc proceeding before we rule in this case? I would submit based on the clarity of this record, no, because as Your Honor has mentioned, there are so many distinctions and so many limitations to Vidal as compared to this case. It is very clear here. If the Court wishes to wait, the Respondent has no objection to waiting for Young to make a clearer statement. What's the standard of review by which we examine the IJ's determination that modified categorical analysis is sufficient here? This Court reviews that legal determination to no vote, Your Honor. Okay. So it's welcome to apply the law, and if Young at all changes the landscape or the Court is concerned that it might, it would be certainly prudent to wait for that. Would you address counsel's claim that there is some ambiguity as to what this gentleman fled to? I wish I could. I'm confused myself as to whether or not there is any. I simply don't see it. I don't know what the more ambiguity. I'm sorry? You're confused about an ambiguity. I am. I suppose that's not surprising. But we have a clear record. I suppose what counsel is asking for would be the abstract of judgment to have some kind of check. It is a check-the-box form, as this Court has discussed. And that is in and of itself a reliable document. But perhaps that needs to have a box that says, as charged in the complaint or something like that. Let's get over to the persecution issue that Judge Noonan raised. Your opposing counsel suggests that in the alias Dr. Rios that the Supreme Court left open the issue of whether forced recruitment is a persecution on account of a political view. She says it's ambiguous. I think that's the theme today. It is. But what's the government's position on that? Given the context of what he had, a 13-year-old boy, they tried to recruit him and beat him up and so on. He had a brother who, I gather, was also recruited and so on. But as a 13-year-old boy, does he fit within alias Dr. Rios? And if not, why not? I would agree it is possible for forced recruitment to be on account of a political opinion. That's what the Supreme Court was saying. The Supreme Court was suggesting that it most likely is not, because that is typically the case. Recruiting Sandinistas or whatever guerrilla groups simply want to swell their ranks. So is the government's position that the petitioner here does or does not qualify as having established past persecution? He could. The problem is he needs to establish that he suffered harm on account of a protected ground. Right. That's my point. Right. Political view is one of the protected grounds. And I'm asking you whether alias Dr. Rios forecloses his claim on that ground. And I think you're saying it's ambiguous. I would actually agree with that. I mean, it's making it a very tough road to hoe. But nonetheless, it's possible. What are you saying, that since he's 13, he probably was recruited on political grounds? No. No, I'm saying he could try to show it. He could try to establish it. Well, I guess the question is, what does the record show? Exactly. And as counsel has pointed out numerous times, he claims to have raised his hand against him, and that's why they came after him. But his own testimony was that he refused to fight. Quote, my fear was they would send me to war. And that is precisely what alias Dr. Rios was talking about. That's administrative record, page 365. And under the Real ID Act, the protected ground must be one central reason for the persecution. And it matters, yes, what his political opinions were. And I don't mean to foreclose that a 13-year-old could manifest a political opinion. It's certainly possible. And he could possibly declare that to his persecutors. But as Your Honor just pointed out, the record doesn't show that. The record doesn't establish that. Well, let's assume the record did show past persecution. Then where would you be? That creates a potentially interesting situation. That would shift the burden of proof to the government because he would enjoy a presumption of future persecution. But we have a record here that belies that, that rebutts that future presumption. If you get to that, don't you get to what Judge Noonan talked about, which is that at least under the country report, Daniel Ortega is the president of the country, the Sandinistas are involved in the government, but they're not persecuting anybody in the sense of the undercat or anything similar. That's correct, Your Honor. Is that correct? There's a newspaper article that I read in the record yesterday, actually, that talks about how Ortega has apparently turned over a new leaf. The Sandinistas were democratically elected. There's no evidence. But it's specific to this case. There's simply no evidence. And by Petitioner's own admission, quote, I have no proof that I will be subjected to future harm. He simply had nothing. He's blatantly speculating. He pretty well just acquiesced on that aspect. He did. Well, it's interesting because we're talking about like we know what's going on in Nicaragua. But the State Department country report says, makes it clear that there is use of torture and other cruel and inhuman and degrading treatment in Nicaragua. So it flat-ups, belies what you're talking about, that somehow, you know, Senor Ortega has turned a new leaf. He's certainly not a saint, Your Honor. But I'm just saying that your own country report out of the State Department, the government's country report suggests that there's still torture and inhumane treatment going on there. Certainly. So if he were to overcome the past persecution and he were to get the benefit of that, then how would the government overcome the country report that basically supports his position? Well, it's with his own testimony. The critical point is whether or not his fear is reasonable. And while he may hold the subjective fear, he was found to be credible. So we have to accept his beliefs as true. But that only means they're subjectively true. They don't mean they're objectively reasonable. And that's the standard we have here. And it's a question of the weight of the evidence. Did he prove that his fear of going back to Nicaragua was reasonable? And he simply failed to do so. He, again, admitted, I have no proof. I have no evidence that anyone similarly situated to myself has faced harm. So for the government's purposes in ruling in this case, you're saying that the concept of past persecution is ambiguous because of your reading of it, Elias Zacharias, but that in this case, even though his burden is exceedingly light, the government has claimed, notwithstanding what Judge McKeown read from the government, the country report, that he doesn't really have any basis for future fears of future persecution. And under the circumstances, he doesn't bear the burden, and therefore he loses. Is that your position? Almost. I would submit that the past persecution burden has not been met. Yes, it was a seriously unfortunate incident. There's no question that that is not acceptable, what happened to him. But we simply have no proof that it was on account of a protected ground. But, again, even if the Court decides that it was, that he did suffer past persecution, again, his fear is unreasonable. And also that is further undercut by the fact that his sister has lived in the family's home in Nicaragua for over two decades unharmed. So we simply don't have an alien that has met his burden of proof. Yes, he might be afraid of returning home, and yes, Nicaragua is obviously not as nice a place as the United States, but that does not entitle him to withholding a removal. If the Court has no further questions. Thank you. Thank you, Your Honor. A minute for rebuttal. Thank you, Your Honor. I'd like to make two really brief points. First, as the government stated, he was found credible. And it wasn't just that the record evidence shows that he didn't want to fight with them. He stated that he politically opposes the Sandinistas. That is in the record at 360. And he stated that his family opposes the Sandinistas. And that is in the record at 367. And the immigration judge accepted that as true. He also stated that the Sandinistas told him that they were going to cut off his hand for raising it up against them. Cutting off the hands of your opponents is a political statement. And second, Your Honor, we also raise a due process challenge here. I think some of the questions that you have been asking or some of the doubts that you have raised could have been answered had the immigration judge asked some additional questions, like what else did he say to the Sandinistas when they were attacking him? What were his other family's activities in Sandinistas? It's not just his brother who fled to the United States and got asylum or, we think, got asylum. He has several other family members in the United States as well. We don't know what their immigration status is or why they have been ‑‑ if they have been granted asylum. So taking into consideration all of the different points that we have raised in our brief, I would urge this Court to grant the petition. Thank you. Thank you. The case just argued, Jose Garcia Gomez v. Holder is submitted. I do want to thank you, Ms. Fumerton, for your participation in the court's pro bono counsel program. And I know the government usually appreciates having counsel petitions on the other  Thank you both for your argument this morning.
judges: Noonan, McKeown, Smith